Filed 1/12/26  P. v. Lafourche CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E085337 |
| v. | (Super.Ct.No. SWF2400274) |
| SEAN BRYAN LAFOURCHE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Timothy J. Hollenhorst, Judge.  Affirmed.

Michaela Dalton, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury found defendant and appellant Sean Bryan Lafourche guilty of arson of a structure (Pen. Code,[1] § 451, subd. (c), count 1); carjacking (§ 215, count 2); and two

_____

[1]  All further statutory references are to the Penal Code.

1

counts of misdemeanor vandalism (§ 594, subd. (b)(2)(A), counts 3 (car tires) & 4 (gun safe)). The jury additionally found true allegations that defendant committed the arson during a declared state of emergency (§ 454, subd. (a)(2)) and with the use of an accelerant (§ 451.1, subd. (a)(5)).

Defendant thereafter admitted allegations that he had suffered a prior serious felony (§ 667, subd. (c)) and prior strike conviction (§ 667, subds. (b)-(i) & 1170, subd. (h)(3)). The court sentenced defendant to 21 years four months in prison.

Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the facts, a statement of the case, and identifying four potentially arguable issues: (1) whether substantial evidence supports the verdicts; (2) whether the court abused its discretion in denying defendant's *Marsden*[2] motion; (3) whether the court abused its discretion in denying defendant's *Romero*[3] motion; and (4) whether the court erred in finding section 654 inapplicable at sentencing.

We offered defendant the opportunity to file a personal supplemental brief, which he has not done. We affirm.

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118.

[3] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant's mother testified that defendant had been living in her converted, detached garage for about a year. Defendant would occasionally stay with his father, who lived in another home in the same city.

Defendant moved out of his mother's garage sometime in January 2024 because he became angered when she requested that he contribute financially to the home: "I was buying his food and everything and paying the electric bill and everything, and after months and months, I just couldn't pay my property taxes, so I was letting him know that I needed him to step up and try to, you know, contribute and stuff, and I hurt his feelings, I guess." "He just gave me a fuck you and flipped me off that last day, and then he didn't talk to me for a few days, and that's why I left because I was afraid."

Defendant's mother left the home for 10 days because she was afraid of defendant. When she returned, she could not get into the garage or her house because keys had been jammed into and broken off in the locks. The only people who had keys to the house and garage were she and defendant. There was a fence around her property with a gate to which only she and defendant had keys. She called a locksmith, who removed the locks and replaced them.

On February 6, 2024, defendant's mother woke between 4:00 and 5:00 a.m. and saw that the garage was on fire. She called 911. Firemen arrived and put out the fire. The garage window had been broken.

3

Defendant's mother tried to move her car because it was between the house and the garage. However, she could not get the vehicle to turn. Eventually she "was able to roll it backwards away from the garage." After "the firemen left, I went back to my car and I realized the tires had been slashed, the two tires, one in front right and rear. That was why I couldn't really control or drive the car. And then I panicked and, and I knew that this was on purpose."

Defendant's father testified that in 2024, defendant lived with him. Defendant used a metal cutting saw to break into his father's gun safe and took eight rifles and two pistols. Defendant then moved in with his mother.

Defendant later came to his father's house and asked for an assault rifle and keys to his father's truck. Defendant said, "if you don't give them to me, I'll burn the house down." Defendant's father declined to acquiesce to the request. However, he gave defendant the keys to his car because of defendant's threat.

Defendant left; he returned an hour later with a can of gasoline. Defendant told him he burned down his mother's garage.

Defendant's father's daughter called 911. The police came and kept defendant's father in protective custody until they apprehended defendant in his father's vehicle.

An officer testified that he responded to a call regarding a possible arson on February 6, 2024. He spoke with defendant's mother. She mentioned that she attempted to move her car, but it had two flat tires. The officer noted that "each of the passenger's side tires had a large slash in the sidewall." He spoke with defendant's father, who said

4

defendant "had told him 'I burned the bitch's house and cut her tires,' and then [defendant] asked for weapons so he could go finish the job."[4]

Defendant's father said he gave defendant the keys to his car because he feared defendant would hurt him otherwise. Defendant's father said defendant threatened to kill him.

The People's arson investigator testified that he arrived while the firefighters were still putting out the fire. Once the fire was extinguished, he examined the garage. There were three separate ignition spots, three Bibles which had been soaked in gasoline. He also found a plastic juice bottle inside the structure which contained gasoline. The arson investigator found a rock inside the structure, which appeared to have been used to break a window of the garage. The investigator concluded that the fire had been intentionally set using an accelerant.

The court took into evidence the People's photographs of the gun safe, the burnt structure, the Bibles, the juice bottle, and defendant's mother's car. The court took judicial notice of the People's exhibits reflecting that the governor had declared a state of emergency, which was effective during the time of the arson.

Prior to trial, defendant moved to dismiss his attorney pursuant to *Marsden*. Defendant stated, "I effectively lost all confidence I had in her ability to defend me and her will to defend me." "So, over the course of my case, she's met with me twice for a total of, maybe, 15 minutes. My last appearance in court, she was still underlining stuff

---

[4] Defendant's father's statements were recorded on bodycam, and the People played the footage for the jury.

in my discovery, which she's had for months. She's not effectively communicated to me how we're going to fight my case."

Defense counsel responded that the People had offered a plea deal of 10 years, which she conveyed to defendant was "a pretty decent offer," "Especially, given the fact that his parents . . . have both indicated to both my office and the DA's Office that they plan to testify against him. They are not sideways in any way. They've indicated they're both scared and frightful of him and want him to be in prison for as long as we can."

"At [the] preliminary hearing where [defendant] discusses me highlighting things, I, typically, while in preliminary hearing, constantly—after reviewing the discovery multiple times, while I'm in a preliminary hearing, I highlight things that I want to make sure I've asked as I'm going. So that's what he probably saw me doing. But in that preliminary hearing, I did get that felony vandalism discharged."[5]

Defendant replied, "two of the crimes I'm being charged with, there's the carjacking and the robbery." "I don't know, can you have a robbery if there's nothing been taken?" Defense counsel responded, "There was never a robbery charge." "An arson, a carjacking, and two counts of vandalism. That's all that there is before us. There is no robbery." Defendant observed, "that's how confused I am because, before, I was

---

[5] The People originally charged defendant in count 3 with felony vandalism. Defense counsel argued at the preliminary hearing, "I believe the only charge that I would like the Court to consider discharging at this point is with regard to Count 3, the felony vandalism." The court discharged defendant of the felony vandalism charge in count 3.

being charged with robbery. According to the paperwork I have, I was being charged with robbery, and carjacking, and arson."

The court noted that defendant was not being charged with robbery. The court observed that defense counsel had "taken the steps necessary to try to do the best that she can, given that she knows your parents are going to testify against you, and there's other evidence."

Defendant stated, "I don't believe she's filing motions. She did file one motion. I do believe—I know you told me not to talk about the specifics, but I believe there was enough in there where they should have thrown out the carjacking." The court noted, "That's not her decision; that's the judge." "[T]he judge held you to answer."

The court noted that once it held defendant to answer, "now you've got to face the prospect of trial. And so, she's doing the best that she can. You have all the discovery. You need to look at that discovery and talk to [defense counsel] about what is admissible and what is not, and then try to decide what you want to do." "[Y]ou're going to have to appreciate the fact that she has other clients and other cases. So she has to figure out a way to manage her time effectively. And I can tell you that she is doing that, listening to her." The court denied defendant's *Marsden* motion.

After trial, defense counsel filed a motion inviting the court to dismiss defendant's prior strike conviction. Defense counsel alleged that defendant's "long battle with childhood trauma, experiences with racism, domestic violence, mental health, and drugs," warranted in favor of striking his prior strike conviction. At sentencing, the People noted

7

that the prior conviction was old, but that defendant had continued a life of crime including committing multiple felonies in 2019, and that the circumstances of the present offenses were of increasing seriousness.

The court agreed that defendant's criminal history was of increasing seriousness. The court noted that defendant had been offered probation after his conviction in 2003, but that he violated probation twice. After being sentenced to and released from prison, defendant had violated his parole several times. The court noted defendant's "criminal history is such that no judge can justify striking your strike prior." The court denied defendant's *Romero* motion.

At sentencing, the court noted, "I think there's [an] argument for upper term, frankly, based on the number of aggravating factors. I think a fair sentence is the mid-term because of the length of time associated and the fact that [section] 654 does not apply to this case. These are two separate crimes, obviously. We have a couple of misdemeanors running concurrent." The court again stressed, "I'll note that [section] 654 does not apply. These crimes were independent of each other."

The court thereafter imposed the midterm of seven years, doubled pursuant to the prior strike conviction, for 14 years on count 1. It imposed the midterm of four years on the accelerant enhancement. The court stayed punishment on the state of emergency enhancement. It imposed one-third the midterm of 20 months, doubled pursuant to the prior strike conviction, for three years four months consecutive on count 2. The court concurrently imposed 364 days in jail on counts 3 and 4.

## II.  DISCUSSION

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error and find no arguable issues.

## III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>McKINSTER          </u>
                                                                                  J.

We concur:

<u>RAMIREZ        </u>
                    P. J.

<u>FIELDS          </u>
                    J.